25CA0682 Larimer County v ICAO 11-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0682
Industrial Claim Appeals Office of the State of Colorado
DD No. 28741-2024

---

Larimer County,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Rita Trostel,

Respondents.

---

ORDER SET ASIDE AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE TOW
Lum and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

---

David P. Ayraud, County Attorney, Christine M. Luckasen, Assistant County Attorney, Fort Collins, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Ira Sanders, Golden, Colorado, for Respondent Rita Trostel

¶ 1     Larimer County appeals the award of unemployment compensation benefits to a former employee, Rita Trostel.  We set aside the order and remand with directions.

## I.     Background

¶ 2     Larimer County employed Trostel as a senior administrative assistant until she quit in July 2024.  A deputy for the Division of Unemployment Insurance determined that she was eligible for benefits under section 8-73-108(4)(j), C.R.S. 2025, because she was "mentally unable to perform the work."  Larimer County contested the benefits award and requested a hearing.  The hearing officer determined that Trostel was disqualified from receiving benefits under section 8-73-108(5)(e)(XXII), which provides that an employer must not be charged for benefits when an individual quits "under conditions involving personal reasons, unless the personal reasons were compelling pursuant to other provisions of subsection (4) of this section."  Specifically, the hearing officer was "unpersuaded" that Trostel was unable to perform the work.

¶ 3     Trostel appealed to the Industrial Claim Appeals Office (the Panel), which reversed the hearing officer's decision and awarded benefits under section 8-73-108(4)(j).  The Panel, relying in part on

*Mesa County Public Library District v. Industrial Claim Appeals Office,* 2017 CO 78, held that Trostel was not mentally able to perform the work.  Larimer County appeals the Panel's decision.

## II.  Legal Principles and Standard of Review

¶ 4  The Panel's review of the hearing officer's decision is governed by section 24-4-105, C.R.S. 2025, of the State Administrative Procedure Act.  *Samaritan Inst. v. Prince-Walker*, 883 P.2d 3, 8 (Colo. 1994).  Under this rubric, the Panel may not set aside the hearing officer's findings of evidentiary fact unless those findings are "contrary to the weight of the evidence."  *Colo. Custom Maid, LLC v. Indus. Claim Appeals Off.*, 2019 CO 43, ¶ 12 (citation omitted).  Ultimate facts, on the other hand, are "conclusions of law or mixed questions of law and fact that are based on evidentiary facts and determine the rights and liabilities of the parties."  *Id.* (quoting *Federico v. Brannan Sand & Gravel Co.*, 788 P.2d 1268, 1272 (Colo. 1990)).

¶ 5  As for our review, we may set aside the Panel's decision if the findings of fact do not support the decision or the decision is erroneous as a matter of law.  § 8-74-107(6)(c)–(d), C.R.S. 2025.  In conducting our review, we "may consider whether the panel 'applied

improper principles of law in reaching its decision.'" *Mesa Cnty. Pub. Libr.*, ¶ 17 (quoting *Gonzales v. Indus. Comm'n*, 740 P.2d 999, 1001 (Colo. 1987)). We review de novo the Panel's ultimate legal conclusion as to whether a claimant was at fault for an employment separation. *Id.* But, like the Panel, we do not disturb the hearing officer's factual findings that are supported by substantial evidence or reasonable inferences drawn from that evidence. *Yotes, Inc. v. Indus. Claim Appeals Off.*, 2013 COA 124, ¶ 10.

¶ 6 The disqualifying provisions of section 8-73-108(5)(e) "must be read in light of the express legislative intent set forth in [section 8-73-108(1)(a)] to provide benefits to those who become unemployed through 'no fault' of their own." *Cole v. Indus. Claim Appeals Off.*, 964 P.2d 617, 618 (Colo. App. 1998). "'[F]ault' is a term of art which is used as a factor to determine whether the claimant or the employer is responsible overall for the separation from employment." *Id.* "[W]hether a claimant is at fault for a separation from employment . . . must be determined on a case-by-case basis, with due consideration given to the totality of the circumstances in each particular situation." *Morris v. City & County of Denver*, 843 P.2d 76, 79 (Colo. App. 1992).

3

## III. Analysis

¶ 7 Larimer County argues that the Panel's decision is not supported by the hearing officer's findings of fact and is erroneous as a matter of law. We agree.

### A. Proceedings Below

¶ 8 The hearing officer found that Trostel resigned from employment two days after returning from Family Medical Leave Act (FMLA) leave because she felt like she was ignored by staff and her supervisor. The hearing officer recognized that Trostel went on FMLA leave due to stress and anxiety, but that upon her return to work she performed her duties, including working the front desk. The hearing officer found that Trostel's stress and anxiety resumed when she felt ignored. Trostel then went to the office on a Saturday (when no one else was working), cleaned out her desk, and left a resignation letter dated the day earlier. She gave two weeks' notice — though explained that she would be taking those two weeks off — and said she was "thankful" for her "role in serving the citizens of the [c]ounty."

¶ 9 The hearing officer determined that the work environment on Trostel's return from leave was not objectively unsatisfactory and

4

there was no evidence that she was unable to continue working. The hearing officer recognized that "although it is undisputed that various health problems motivated [Trostel's] decision to quit, it is also clear that her separation from this employment resulted when she chose to resign." The hearing officer concluded that Trostel quit for "subjectively personal reasons" and was not entitled to benefits.

¶ 10    The Panel found no error in the hearing officer's findings but determined that his legal analysis was incorrect. The Panel said:

> In general, unemployment benefits are intended for those separated from employment due to no fault of their own. Section 8-73-108(1)(a). "Fault" for these purposes does not necessarily mean culpability, but is defined as a volitional act or the opportunity to exercise some control in the totality of the circumstances. *See Collins v. Indus. Claim Appeals Off.*, 813 P.2d 804 (Colo. App. 1991). However, because quitting is volitional, it is generally unnecessary to consider whether the claimant is at "fault" for the separation from employment. Instead, the pertinent consideration is whether an award is warranted under the statute. *See Cole v. Indus. Claim Appeals Off.*, 964 P.2d 617 (Colo. App. 1998); *see also M & A Acquisition Corp. v. Indus. Claim Appeals Off.*, 456 P.3d 102 (Colo. App. 2019).

¶ 11    The Panel then noted that section 8-73-108(4)(j) provides for an award of benefits when a claimant separates from employment

because of a physical or mental inability to perform the work. The Panel cited *Mesa County* for the proposition that "where a claimant separates because of a mental inability to perform assigned work, inquiry into the cause of the mental inability is not required by section 8-73-108(4)(j) or related case law."

¶ 12 The Panel repeated the hearing officer's findings that Trostel quit shortly after returning from FMLA leave because she felt like she was ignored by staff and her supervisor. The Panel also repeated the hearing officer's findings that Trostel's stress and anxiety resumed following her return to work. The Panel then held that "based on these findings, we conclude that [Trostel] separated from this employment because she was not mentally able to perform the work," and awarded benefits under section 8-73-108(4)(j).

## B. The Panel's Errors

¶ 13 As a threshold issue, we acknowledge that the level of deference the Panel must give to the hearing officer is governed by whether the question of a claimant's mental inability to perform the work is an evidentiary fact or an ultimate fact. As noted, the Panel owes (as do we) great deference to the hearing officer's findings of

6

evidentiary fact, but it is permitted to reweigh those evidentiary facts to come to a different conclusion on an ultimate fact — that is, a conclusion, based on the evidentiary facts, which determines the rights and liabilities of the parties. *Colo. Custom Maid, LLC*, ¶ 12. The supreme court's guidance is not entirely clear as to the category in which the mental inability question belongs.

¶ 14 Over fifty years ago, when applying similar language in an older version of the statute, the supreme court characterized whether "claimant's unsatisfactory work was the result of being mentally unable to perform the work" as an ultimate fact. *Tague v. Coors Porcelain Co.*, 481 P.2d 424, 426 (Colo. App. 1971) (discussing section 82-4-8(4), C.R.S. 1963).

¶ 15 But in *Mesa County Public Library*, the supreme court described the Panel as having "adopted the hearing officer's *finding* that [the claimant] was mentally unable to perform her job duties." *Mesa Cnty. Pub. Libr.*, ¶ 2 (emphasis added). The court distinguished that finding from the hearing officer's *conclusion* that the claimant was nevertheless at fault for this inability. *Id.* at ¶ 13. However, the court later referred to the resolution of this question as both a "finding" and a "determin[ation]," *id.* at ¶ 23, before once

7

again saying that the hearing officer "found" that the claimant was unable to perform her job duties, *id.* at ¶ 27.

¶ 16     It appears that the supreme court in *Mesa County* treated the issue as an evidentiary fact rather than an ultimate one.[1]  If that is the case, the Panel failed to defer to the hearing officer's finding in this regard, despite record support for it.  Our inquiry would thus generally end there with the necessary result being a reversal of the Panel's erroneous decision.  *See Yotes*, ¶ 28 ("Because the hearing officer's findings are supported by substantial evidence in the record, they are binding on review by the Panel.").

¶ 17     In light of the analytical uncertainty, however, we alternatively address whether the Panel erred in its application of the law or its reweighing of the hearing officer's evidentiary facts to reach a different conclusion on the ultimate fact of whether Trostel was unable to perform the work.  We conclude that it did both.

---

[1] Consistent with this later approach, the court of appeals division in *Cole v. Industrial Claim Appeals Office*, 964 P.2d 617, 618 (Colo. App. 1998), treated the issue as an evidentiary — rather than an ultimate — fact when it noted that "the hearing officer did not make any evidentiary finding, implicitly or otherwise, that claimant was unable to continue working at the time of her resignation, nor would the record support any such finding."

¶ 18     First, we disagree with the Panel's characterization of the legal test.  The Panel said, "[B]ecause quitting is volitional, it is generally unnecessary to consider whether the claimant is at 'fault' for the separation from employment.  Instead, the pertinent consideration is whether an award is warranted under the statute."  At its core, the second sentiment is accurate: the pertinent consideration in any benefits eligibility case is whether an award is warranted under the statute.

¶ 19     But the first statement is simply wrong, and neither case the Panel cites in support of the proposition — *Cole* and *M & A Acquisition Corp.* — can bear the weight the Panel places on it.  In *Cole*, the division did not say fault was not to be considered; to the contrary, the division said, 'fault' is a term of art which is used as a factor to determine whether the claimant or the employer is responsible overall for the separation from employment."  *Cole*, 964 P.2d at 618.  And the relevance of *M & A Acquisition Corp.* is unclear, as the claimant in that case did not quit but, rather, was fired.  *M & A Acquisition Corp.*, ¶ 1.  In any event, the division instructed the Panel on remand to consider whether the claimant was at fault for the separation.  *Id.* at ¶ 26.  Thus, to the extent the

Panel determined that it did not need to consider whether Trostel was at fault for her separation from employment, it applied the wrong legal standard.

¶ 20     Moreover, while the hearing officer relied on *Cole*, the Panel felt that *Mesa County* required a determination that Trostel was entitled to benefits.  The Panel, however, misreads *Mesa County*.

¶ 21     In *Mesa County*, the employee was terminated after she failed to complete a required report despite having been warned that failure to do so may result in termination.  *Mesa Cnty. Pub. Libr.*, ¶¶ 6-9.  The hearing officer determined that the employee was mentally unable to perform her duties but found that her own underperformance at work, which led to her supervisors' criticism of her, had caused her inability to perform.  *Id.* at ¶ 12.  The supreme court held that, once an employee is found to be "mentally unable to perform the work," the statute does not permit an inquiry into the cause of that mental inability.  *Id.* at ¶¶ 22-23.  Instead, the supreme court ruled, "A finding by the Division under section 8-73-108(4)(j) that an employee is 'mentally unable to perform the work' effectively amounts to a finding that the employee is not at fault for her separation from employment."  *Id.* at ¶ 23.

¶ 22    Here, in direct contrast to *Mesa County*, the hearing officer did not determine that Trostel was mentally unable to perform the work and then seek to identify the cause of her inability to do so.  To the contrary, he determined that Trostel *was not* mentally unable to perform the work.  *Mesa County*, therefore, has no bearing on this case, and, by giving it dispositive weight, the Panel applied the wrong legal standard.

¶ 23    Second, to the extent the Panel could be said to have simply exercised its authority to reweigh the hearing officer's evidentiary findings to arrive at a different ultimate fact, we conclude that the evidentiary findings do not support the Panel's decision.

¶ 24    The hearing officer heard the following evidence.  Trostel testified that she quit for "health reasons, [being] incapacitated," and "needed to quit due to stress manifesting in health issues."  When she took FMLA leave, she submitted documentation from her physician that she was unable to work due to "stress and the effects on her body, mind, and spirit" as a result of an alleged "toxic work environment."  She also testified that she had been sexually harassed for two decades by a manager who no longer worked for

11

Larimer County. She reported the harassment in early 2020, and Larimer County terminated the manager a few weeks later.

¶ 25    On cross-examination, Trostel was asked about another letter from her physician clearing her to return to work after her FMLA leave. Trostel testified that, at that time, she agreed with the doctor that her symptoms were under control. She also acknowledged that the sexual harassment allegations had been resolved four years earlier and that the manager's employment had ended at that time.[2] When asked to explain what about that incident led Trostel to quit in 2024, Trostel testified that new management "diminished her value" and she felt "ostracized."

¶ 26    When Trostel returned to work, she successfully performed her duties for two days. While she testified that her "symptoms resumed" when "she walked in the door," she did not notify anyone that her symptoms had recurred. When she resigned, she made no

---

[2] Trostel testified that she believed the manager had been allowed to quit. A human resources representative for the county testified that Larimer County fired the manager in March 2020. Regardless, it is undisputed that the manager's employment with the county ended in early 2020 as a result of the harassment.

mention of mental inability to do the work, sought no additional leave, and provided no explanation for her resignation.

¶ 27    Based on this evidence, the hearing officer found that the work environment upon returning from FMLA leave was not objectively unsatisfactory.  The Panel disagreed with the hearing officer and determined that Trostel was mentally unable to perform the work.  Significantly, it did so without explaining *why* the evidentiary facts warranted a determination that Trostel was mentally unable to perform the work.

¶ 28    Perhaps that is because the hearing officer's findings of evidentiary fact do not support the Panel's determination.  The work environment was not objectively unreasonable and there is no evidence, let alone substantial evidence, that Trostel was mentally unable to perform any functions of her work.

## IV.   Disposition

¶ 29    Because the Panel's decision is not supported by substantial evidence and is erroneous as a matter of law, we must set it aside.  We remand with directions to reinstate the hearing officer's decision disqualifying Trostel from unemployment compensation benefits.

JUDGE LUM and JUDGE MOULTRIE concur.

13